# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JESSICA PARM and LISA FLAGG, on Behalf of Themselves and All Others Similarly Situated,

        Plaintiff,

        v.

BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST CO., a North Carolina Chartered Bank, NATIONAL BANK OF CALIFORNIA, NORTH AMERICAN BANKING CO., a Minnesota Chartered Bank, and FIRST PREMIER BANK, a South Dakota State-Chartered Bank.

        Defendants.

Case No. 13-CV-3326-JEC

Hon. Julie. E. Carnes

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT NORTH AMERICAN BANKING COMPANY'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

    I.     THE LIBERAL SCOPE OF THE FAA HAS NO
          APPLICABILITY TO A NON-PARTY ..................................................3

    II.    BECAUSE THE AGREEMENT IS ILLEGAL
          AND BMO IS A NON-SIGNATORY, THIS
          COURT SHOULD NOT ENFORCE THE
          ARBITRATION CLAUSE AGAINST PLAINTIFF ..............................4

    III.   NABC CANNOT ENFORCE THE ARBITRATION
          PROVISION AS A THIRD-PARTY BENEFICIARY ..........................7

    IV.   NABC'S ATTEMPT TO COMPEL ARBITRATION
          AS AN AGENT OF THE ILLEGAL LENDER ALSO FAILS ...........10

    V.    NABC CANNOT INVOKE EQUITABLE ESTOPPEL
          TO ENFORCE THE AGREEMENTS ..................................................12

          A.    NABC Has Not Met Its Burden to Show Equitable
                Estoppel is Available under the Law Governing
                the Agreements. ..........................................................................13

          B.    Even if this Court Considers the Issue Under
                Georgia Law, Equitable Estoppel Does Not Apply ...................15

                1.    Plaintiffs Do Not Rely on the Terms of
                        the Contracts to Assert Their Claims...............................15

                2.    The Complaint's Allegations Do Not
                        Afford NABC the Right to Arbitrate
                        under Principles of Equitable Estoppel ...........................22

3. NABC's Unclean Hands Bar it from Utilizing Equitable Doctrines to Enforce Clauses Contained in the Agreements ............................ 24

CONCLUSION ........................................................................................... 25

**TABLE OF AUTHORITIES**

**Federal Cases**                                                                        **Page**

*$89,000, Plus or Minus, in U.S. Currency & Checks v. Ricon*,
   691 F. Supp. 1411 (N.D. Ga. 1988).........................................................................24

*ABF Freight Sys., Inc. v. NLRB*,
   510 U.S. 317 (1994)..................................................................................................24

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009).........................................................................................*passim*

*Bahamas Sales Assoc., LLC v. Byers*,
   701 F.3d 1335 (11th Cir. 2012) .......................................................................*passim*

*Bailey v. ERG Enterprises, LP*,
   705 F.3d 1311 (11th Cir. 2013) .......................................................................*passim*

*Blu–J, Inc. v. Kemper C.P.A. Group*,
   916 F.2d 637 (11th Cir. 1990) .........................................................................8, 10

*Brantley v. Republic Mortg. Ins. Co.*,
   424 F.3d 392 (4th Cir. 2005) ................................................................ 16, 19-20

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)....................................................................................................5

*Bullock v. BankChampaign, N.A.*,
   133 S.Ct. 1754 (2013)..............................................................................................24

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
   117 F.3d 655 (2d Cir. 1997) .....................................................................................7

*Denney v. Jenkens & Gilchrist*,
   412 F. Supp. 2d 293 (S.D.N.Y. 2005) .....................................................................6

*Feeley v. Total Realty Mgmt.*,
   660 F. Supp. 2d 700 (E.D.Va. 2009) ....................................................................12

*Gen. Conference of Evangelical Methodist Church v.*
   *Evangelical Methodist Church of Dalton, Georgia, Inc.*,
   807 F. Supp. 2d 1291 (N.D.Ga. 2011).....................................................................4

*Hawkins v. KPMG LLP*,
  423 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................................. 25

*In re ACM-Tex., Inc.*,
  430 B.R. 371 (Bankr. W.D. Tex. 2010) ................................................................. 12

*In re Humana Inc. Managed Care Litig.*,
  285 F.3d 971 (11th Cir. 2002) ..................................................................... *passim*

*In re Uwimana*,
  274 F.3d 806 (4th Cir. 2001) ............................................................................. 24

*In re Wholesale Grocery Products Antitrust Litigation*,
  707 F.3d 917 (8th Cir. 2013) ........................................................................ 23, 24

*Keystone Driller Co. v. General Excavator Co.*,
  290 U.S. 240 (1933) .......................................................................................... 25

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ........................................................................... 19

*Lawson v. Life of the S. Ins. Co.*,
  648 F.3d 1166 (11th Cir. 2011) ................................................................... *passim*

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
  449 Fed. Appx. 704 (10th Cir. 2011) .................................................................. 19

*McMullen v. Hoffman*,
  174 U.S. 639 (1899) ......................................................................................... 5, 6

*Mims v. Global Credit and Collection Corp.*,
  803 F. Supp. 2d 1349 (S.D. Fla. 2011) ............................................................... 11

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999) ...................................................................... 20, 23

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ...................................................................... 19, 23

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) .......................................................................................... 16

*Peters v. The Keyes Co.*,
  No. 10–12261, 2010 WL 4386721 (11th Cir. Nov. 5, 2010) ................................... 8

*Precision Co. v. Automotive Co.*,
 324 U.S. 806 (1945)...............................................................24

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 U.S. 395 (1967)...............................................................24

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 7 F.3d 1110 (3d Cir. 1993) ....................................................24

*Rajagopalan v. NoteWorld, LLC*,
 718 F.3d 844 (9th Cir. 2013) ...................................................4

*Rent-A-Ctr., W., Inc. v. Jackson*,
 561 U.S. 63, 130 S.Ct. 2772 (2010)........................................7

*S. Mills, Inc. v. Nunes*,
 1:10-CV-03340-RWS, 2011 WL 2358652 (N.D.Ga. June 9, 2011) .........................7

*Todd v. Steamship Mut. Underwriting Ass'n (Bermuda)*,
 601 F.3d 329 (5th Cir. 2010) .................................................14

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
 363 U.S. 574 (1960)...............................................................13

*Wallace v. Rick Case Auto, Inc.*,
 1:12-CV-4271-TWT, 2013 WL 5770996 (N.D.Ga. Oct. 23, 2013).........................20

## State Cases

*Autonation Fin. Servs. Corp. v. Arain*,
 592 S.E.2d 96 (Ga. Ct. App. 2003)................................20, 21, 23

*Danjor, Inc. v. Corporate Constr., Inc.*,
 272 Ga. App. 695, 613 S.E.2d 218 (2005) ...............................8

*Donnalley v. Sterling*,
 618 S.E.2d 639 (Ga. Ct. App. 2005)........................................8

*Minor v. McDaniel*,
 435 S.E.2d 508 (Ga. Ct. App. 1993)........................................5

*Order Homes, LLC v. Iverson*,
 685 S.E.2d 304 (Ga. Ct. App. 2009)......................................20

## Federal Statutes

15 U.S.C. §1601 ...................................................................................................9

15 U.S.C. §1692f ..................................................................................................9

15 U.S.C. §1692g .................................................................................................9

15 U.S.C. §1693k .............................................................................................6, 7

## State Statutes

Ga. Code Ann. §16-17-2 .......................................................................................5

## INTRODUCTION

Defendant North American Banking Company ("NABC") seeks to enforce the arbitration provisions contained in payday loan agreements ("Agreements")—to which it is not a party—between Plaintiff Jessica Parm ("Plaintiff Parm") and the illicit online payday lender Plain Green, LLC ("Plain Green") and between Plaintiff Lisa Flagg ("Plaintiff Flagg") and Plain Green. Online payday lenders like Plain Green—many of which are based offshore or purportedly on Indian reservations—operate over the Internet in order to circumvent the laws of 13 states and the District of Columbia, including Georgia, that ban these loans (the "Illegal Payday Lenders").

Like other defendants in this case, NABC is seeking to enforce provisions that would eliminate the rights of Plaintiffs, both Georgia consumers, to pursue their claims before this Court—based on agreements in which NABC was never contemplated as a party and whose express terms violate Georgia usury laws. *See* Doc. 86-2, p. 20 (disclosed annual interest rate of 219.38% for total payments of $5,259.09 on a $1,600 loan for Plaintiff Flagg) and Doc. 86-2, pp. 45, 51 and 57 (disclosed annual interest rates of 354.20%, 382.68% and 294.63%, for total payments of $2,493.97, $590.58 and $3,329.91 on loans of $800, $250 and $1,000, respectively, for Plaintiff Parm).[1]

---

[1] Plaintiffs' citations to the record refer to the file-stamped page numbers in the top right corner of the ECF-filed documents rather than those in the bottom center margin.

To compel repayment of their unlawful loans, Illegal Payday Lenders need access to borrowers' bank accounts so they can directly debit payments, fees, and penalties. NABC is one of a small number of financial institutions that entered into agreements with Illegal Payday Lenders to debit borrowers' accounts as Originating Depository Financial Institutions ("ODFIs") in the ACH Network. In exchange, NABC receives a transactional fee for each debit it originates. (*See* Doc. 1, ¶¶ 123, 364).

NABC knowingly contracted with Illegal Payday Lenders, including Plain Green, to originate ACH transactions on their behalf. (Doc. 1, ¶ 112). This is not a "traditional" banking function like holding deposited funds; NABC *chose* to originate ACH entries on behalf of high-risk merchants like the Illegal Payday Lenders—in the face of NACHA Rules and OCC and FDIC guidelines warning against it—to turn extra profit. Doubling down on its prohibited conduct, NABC now seeks to enforce the illegal loan agreements to avoid liability for its actions.

NABC's argument that the Federal Arbitration Act ("FAA") mandates arbitration here is beside the point because the FAA does not even come into play until NABC shows it is entitled to enforce the Agreements ***as a non-party*** under traditional state law principles. That it cannot do. NABC also contends it should be able to enforce the arbitration provisions as a third-party beneficiary of the Agreements or as an agent of Plain Green or under principles of equitable estoppel. But the Agreements are illegal, and their provisions are not enforceable by this Court. Even if enforceable,

however, NABC has not met its burden of showing that both of the actual parties to the respective Agreements intended to create rights for NABC to be considered a third-party beneficiary. Nor has it established that it is Plain Green's agent (and under NACHA Rules, it cannot be its agent). Likewise, NABC cannot enforce the Agreements under equitable estoppel because Plaintiffs do not rely on the duties and obligations set forth *in the Agreements* to assert their statutory and state law claims and because NABC has unclean hands. For these reasons, NABC's motion must be denied.

## ARGUMENT

## I.   THE LIBERAL SCOPE OF THE FAA HAS NO APPLICABILITY TO A NON-PARTY

NABC spends a considerable portion of its brief reciting the broad "disputes" provisions in the Agreements (*see* Doc. 86-1, pp. 5-6, 11, 12-15) and the FAA's "strong national policy in favor of arbitration" (*see id.*, pp. 10-11). But these arguments are a red herring because the scopes of the arbitration provisions and FAA have no applicability to NABC until it can *first* establish it has the right to enforce the Agreements as a non-party under traditional principles of state law.[2]

---

[2] The "[t]raditional principles of state law" determine whether a "contract [may] be enforced by or against nonparties to the contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Accordingly, the "strong national policy in favor of arbitration" heralded by NABC is not implicated until NABC establishes it has the right to enforce the Agreements as a non-signatory under state law.

It is black-letter law that the liberal federal policy regarding the scope of arbitrable issues does not apply where, as here, the question is whether a non-party to the Agreements is even *covered* by the arbitration provisions. *See, e.g., Gen. Conference of Evangelical Methodist Church v. Evangelical Methodist Church of Dalton, Georgia, Inc*., 807 F. Supp. 2d 1291, 1299 (N.D. Ga. 2011) ("[w]hile there is a liberal federal policy favoring arbitration agreements, 'the FAA's strong pro[-]arbitration policy only applies to disputes that the ***parties have agreed to arbitrate***.'") (quotations omitted and emphasis added); *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1170 (11th Cir. 2011) (stating same); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (where the question is "not whether a particular issue is arbitrable, but whether a particular ***party*** is bound by the arbitration agreement . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite.") (quotations omitted and emphasis in original). Because NABC cannot enforce the Agreements under traditional principles of state law, the scopes of the FAA and the arbitration provisions have no bearing on non-party NABC.

## II. BECAUSE THE AGREEMENTS ARE ILLEGAL AND NABC IS A NON-SIGNATORY, THIS COURT SHOULD NOT ENFORCE THE ARBITRATION CLAUSES AGAINST PLAINTIFFS

NABC fails to mention that the Agreements it seeks to enforce—with their disclosed interest rates of 219.38%, 354.20%, 382.68% and 294.63%, respectively (*see*

Doc. 86-2, pp. 20, 45, 51 and 57)—are indisputably illegal in Georgia.[3] Even assuming that NABC had a credible argument for compelling arbitration based on contracts it did not sign, which it does not, NABC's motion fails because the arbitration clauses are contained in illegal contracts, which the Court may not enforce. "A court of justice will not lend its aid to the enforcement of any contract the making of which is prohibited, nor to the enforcement of anything necessary to complete the accomplishment of an unlawful purpose." *Minor v. McDaniel*, 435 S.E.2d 508, 510 (Ga. Ct. App. 1993).

It has long been the law in Georgia that "[i]n case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, ***nor will they enforce any alleged right directly springing from such contract*** . . . ." *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) (emphasis added).

It is true that subsequent to the seminal decision of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), there have been many reported decisions in which courts have compelled arbitration of claims *as between signatories* where the underlying contract was illegal. *See*, *e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator). Regarding *non-signatories*, however, there is no reported case in this Circuit in which a court has allowed a non-signatory to enforce an arbitration agreement contained in an illegal

---

[3] *See* Ga. Code Ann. §16-17-2 (prohibiting such payday loans).

contract. Here, NABC did not sign the Agreements, and instead seeks the assistance of this Court to strip Plaintiffs Parm and Flagg of their rights to adjudicate their claims by imposing arbitration. As such, an entirely different analysis applies: "[b]ecause arbitration is a matter of contract, exceptional circumstances must apply before a court will allow a non[-]contracting party to impose a contractual agreement to arbitrate." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005).

As a non-signatory to the Agreements, NABC can only compel arbitration of Plaintiffs' claims with the assistance of the Court. In so doing, NABC is explicitly seeking this Court's assistance in enforcing illegal contracts and in particular, "an alleged right directly springing from such contract[s]." *McMullen*, 174 U.S. at 654. This Court may not lend its assistance to NABC's efforts.

NABC also argues that its right to compel arbitration is bolstered by the fact that the Agreements authorized Plain Green to credit and debit the bank accounts of Plaintiffs Parm and Flagg using the ACH Network ("ACH Authorizations"). (Doc. 86-1, pp. 7-8; *see also* 86-2, pp. 22-23, 46, 52, 58). But the ACH Authorizations never mention NABC, do not mention ODFIs in general, and say nothing about arbitration. And the ACH Authorizations raise more questions for NABC than they answer; specifically, whether the payday loans to Plaintiffs were conditioned on Plaintiffs' preauthorization of the ACH debits from their accounts. Such a precondition would violate the Electronic Funds Transfer Act (EFTA), including 15 U.S.C. § 1693k and

Regulation E promulgated by the Board of Governors of the Federal Reserve System.[4] In linking the potentially illegal ACH Authorizations with the respective arbitration provisions, NABC concedes that the Authorizations bear "some substantial relationship" to "the arbitration clause in particular." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997). If a party challenges the validity of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 2778 (2010); *S. Mills, Inc. v. Nunes*, 1:10-CV-03340-RWS, 2011 WL 2358652 (N.D. Ga. June 9, 2011) ("fraud in the inducement of the arbitration clause itself ... may be adjudicated by the court ...") (quoting *Campaniello*). Accordingly, even if this Court were prepared to compel arbitration with NABC, it must first determine the factual issue of whether Plaintiffs were (illegally) required to preauthorize ACH debits as a condition of their respective loans before it may determine whether the agreements to arbitrate are valid.

## III.   NABC CANNOT ENFORCE THE ARBITRATION PROVISION AS A THIRD-PARTY BENEFICIARY

NABC cannot enforce the arbitration provision because it is not an intended beneficiary of the Agreements and has no rights of enforcement. "Non-parties to a

---

[4] Section 1693k(1) states in pertinent part: "No person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers. . .".

contract containing an arbitration clause cannot compel parties to a contract to arbitrate unless it is determined that they are a third party beneficiary to the contract." *Peters v. The Keyes Co.*, No. 10–12261, 2010 WL 4386721, at *3 (11th Cir. Nov. 5, 2010). Importantly, "the contracting parties' intention to benefit the third party must be shown on the face of the contract." *Donnalley v. Sterling*, 618 S.E.2d 639, 641 (Ga. Ct. App. 2005), and "[t]here must be a promise by the promisor to the promisee to render some performance to a third person," *Danjor, Inc. v. Corporate Constr., Inc.*, 613 S.E.2d 218, 221 (Ga. Ct. App. 2005).[5]

While NABC argues that the Agreements between Plain Green and Plaintiffs "evince a clear intent to benefit third-party service providers like NABC" (Doc. 86-1, p. 18) because they "authorize Plain Green and its 'agents' to initiate ACH credit and debit entries to Plaintiffs' bank accounts" (*id.*, p. 17)—in fact, the opposite is clear. The Agreements do not mention ODFIs (or NABC) at all, and each arbitration provision specifically limits an arbitrable "Dispute" to a "controversy or claim arising between [the borrower] and Plain Green, its marketing agent, its collection agent, or any subsequent holder of the Note, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder"

---

[5] *See also Blu–J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990) ("[I]t must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party.").

for purposes of this Agreement)"[6]—none of which could possibly apply to NABC. (Doc. 86-2, pp. 26, 48, 54, 60). And it nowhere defines "collection agent," against all common sense, to include ODFIs like NABC.[7]

NABC also asserts that "Plaintiffs agreed to arbitrate 'any Dispute' they have with Plain Green or its related third parties" and implies that it qualifies as a "related third party," a term that appears in the arbitration provision but that is never defined. (Doc. 86-2, pp. 26, 48, 54, 60). Notably, "related third parties" are not included in the list of potential parties to a "Dispute" identified in the arbitration provision, suggesting that Plain Green's marketing agent and collection agent along with any subsequent noteholders constitute the universe of "related third parties." (*Id.*).

There is simply no indication that Plain Green and Plaintiffs intended to confer a benefit on NABC when they entered into their respective Agreements. *See Lawson*, 648 F.3d at 1172 ("The loan agreement does not show, on its face or elsewhere, an

---

[6] By quoting in snippets, NABC incorrectly represents that a "Dispute" includes claims involving any "'collection agent' – 'or any of their respective agents'" (Doc. 86-1, p. 13; *see also id.*, p. 2) when in fact, the second clause refers solely to the respective agents of "any subsequent holder of this Note," (and not to respective agents of a collection agent) as evinced by the defined term "Holder" at the end of the sentence. Regardless, NABC is neither a collection agent nor the agent of one.

[7] If NABC truly wishes this Court to consider it Plain Green's "collection agent," NABC's debiting of Plaintiffs' checking accounts involved a myriad of violations of the Fair Debt Collection Practices Act. 15 U.S.C. § 1601 *et seq.* Among other things, NABC's collection of debt which is unlawful under Georgia law is an unfair practice under 15 U.S.C. § 1692f(1), and NABC failed to provide Plaintiffs with the requisite written notice allowing Plaintiffs to dispute their debts to Plain Green in violation of 15 U.S.C. § 1692g.

intent to allow anyone other than the Lawsons, the car dealership, Chase Manhattan, and the assignees of the dealership or Chase Manhattan to compel arbitration of a dispute, and Life of the South is none of those."). As it cannot demonstrate that Plain Green and Plaintiffs intended to confer a direct and substantial benefit upon it, NABC's argument that it is a third party beneficiary must be rejected. *See Blu–J, Inc.*, 916 F.2d at 640.

## IV. NABC'S ATTEMPT TO COMPEL ARBITRATION AS AN AGENT OF THE ILLEGAL LENDER ALSO FAILS

NABC argues unpersuasively that arbitration should be compelled because it is an "agent" of Plain Green. While NABC points to Plaintiffs' Complaint to bolster its claim that it is an agent of the lender (Doc. 86-1, pp. 8, 14, 18, 20), the Complaint lends no such support. The entire thrust of the Complaint is that NABC was not permitted to act as if it were an agent of Illegal Payday Lenders, blindly complying with payment processing requests. To the contrary, NACHA operating rules made NABC a "gatekeeper" to the ACH network, and required NABC independently to evaluate and monitor the activities of Plain Green and others it allowed to access the network. (Doc. 1, ¶ 47.) NABC should have controlled the actions of the lender, rather than the other way around. Indeed, NABC had duties to the ACH Network that preempted its contractual duties to Plain Green. It was required to refuse Plain Green's processing requests to the extent they violated state law, the ACH Rules or other

regulatory requirements. (*See* Doc. 1, ¶¶ 47-59). The duties NABC had under NACHA Rules—to act as an independent monitor for potentially unlawful or inappropriate activity—eliminate any possibility that Plain Green controls the activities of NABC and are not compatible with an agency relationship on behalf of Plain Green.

In *Mims v. Global Credit and Collection Corp.*, 803 F. Supp. 2d 1349, 1355-56 (S.D. Fla. 2011), an actual debt collector acting on behalf of a bank argued that it was entitled to invoke the arbitration clause in the credit agreement between the plaintiff and the bank. The court rejected the debt collector's assertion that it was the bank's agent, pointing to the third party collection services agreement that explicitly defined the debt collector's role as that of an independent contractor and not as agent. While Plaintiffs do not yet have access to the ODFI agreement between NABC and Plain Green,[8] the NACHA Rules referenced above perform exactly the same function as the agreement in *Mims*, prohibiting NABC from acting as Plain Green's agent.

Contrary to NABC's assertion, Plaintiffs' claims against NABC are not based on allegations that "NABC was acting as an agent of . . . Plain Green in facilitating the

---

[8] On January 21, 2014, Plaintiff filed a Motion for Limited Discovery to obtain the "ODFI agreements between Defendants and the payday lenders to determine whether Defendants' agency and third party beneficiary theories can be supported by the record." (Doc. 87).

repayment of the loans."[9] (Doc. 86-1, p. 19). NABC appears to confuse allegations of conspiracy (which Plaintiffs do make) with allegations of agency (which they do not make). But no agency relationship can exist among conspirators because agents are "legally incapable of conspiracy." *See Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 711 (E.D. Va. 2009). Indeed, "[a]lthough agency requires a meeting of the minds, it is not the same meeting of the minds as required for a conspiracy claim. The meeting of the minds required to show agency is a meeting of the minds to establish an agency relationship between two parties…A meeting of the minds for civil conspiracy, on the other hand, requires a meeting of the minds to achieve an unlawful object or course of action." *In re ACM-Tex., Inc.*, 430 B.R. 371, 427 (Bankr. W.D. Tex. 2010). NABC cannot transform Plaintiffs' allegations of conspiracy into allegations of agency.

Because NACHA Rules prevented NABC from being an agent of Plain Green, and because allegations of conspiracy do not equate to allegations of an agency relationship (indeed, they necessarily exclude such an agency relationship), NABC has no basis upon which to compel arbitration.

## V.   NABC CANNOT INVOKE EQUITABLE ESTOPPEL TO ENFORCE THE AGREEMENTS

---

[9] For this reason, *Pritzker v. Merrill Lynch, Pierce, Feener & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), cited by NABC to illustrate the application of agency principles to compel arbitration of a non-signatory, is not instructive. (Doc. 86-1, p. 19).

Notwithstanding that the Agreements are illegal, NABC asserts it should be permitted to enforce the arbitration clauses as a non-signatory through the doctrine of equitable estoppel. This argument fails for multiple reasons.

### A.    NABC Has Not Met Its Burden to Show Equitable Estoppel is Available under the Law Governing the Agreements.

NABC cannot proceed under an equitable estoppel theory because it has not met its burden to establish that the law governing the Agreements recognizes equitable estoppel as an exception to the general rule that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). A non-signatory to an arbitration agreement can only compel parties to arbitrate under the FAA when "the relevant state contract law allows him to enforce the agreement." *Arthur Andersen*, 556 U.S. at 632. *See also* Doc. 86-1, pp. 16-17 (citing *Lawson*, 648 F. 3d at 1170).[10]

As such, when the law of the contract sets forth the applicable governing law, the Court must apply that law to determine whether it "recognizes enforcement against a nonparty to the contract under traditional contract doctrines of 'assumption, piercing

---

[10] In *Lawson*, the Eleventh Circuit noted that many of its prior decisions regarding application of the equitable estoppel doctrine "have not made clear that the applicable state law provides the rule of decision for that question." 648 F.3d at 1170-71 (collecting cases). The court recognized: "the Supreme Court's 2009 decision in [*Arthur Andersen*], which postdates all of those decisions of this Court, clarifies that state law governs that question, and to the extent any of our earlier decisions indicate to the contrary, those indications are overruled or at least undermined to the point of abrogation by [*Arthur Andersen*]." *Id*. at 1171.

the corporate veil, alter ego, incorporation by reference, third-party beneficiary

theories, waiver [or] estoppel.'" *Arthur Andersen*, 556 U.S. at 631 (citations omitted).

*See also Todd v. Steamship Mut. Underwriting Ass'n (Bermuda)*, 601 F.3d 329, 336

(5th Cir. 2010) (remanding for district court to "address the effect of the clause in the

[agreement] selecting English law to govern" equitable estoppel analysis in light of

*Arthur Andersen*).

NABC, throughout its brief, invokes and attempts to enforce the language of the

Agreements when it benefits NABC, but neglects to inform the Court that in at least

*ten* places, each Agreement states that it is to be governed *exclusively* by the laws of

the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana

("Chippewa Cree").[11] In addition, Plain Green required Plaintiff Flagg to check a box

that expressly provides:

> . . . I further understand, acknowledge and agree that **this loan is
> governed by the laws of the Chippewa Cree Tribe and is <u>not subject
> to the provisions or protections of the laws of my home state</u>** or any
> other state. (Doc. 86-2, p. 29) (emphasis added).

On the one hand, NABC invokes the language of the Agreements where

convenient (on arbitration) and ignores it on the issue of whether the law of the

---

[11] *See, e.g.,* Agreement between Plaintiff Flagg and Plain Green: Doc. 86-2, p. 20
("This Loan Agreement . . . is subject solely to the exclusive laws and jurisdiction of
the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana"); *id.*, p. 26
("You agree that any Dispute . . . will be resolved by arbitration in accordance with
Chippewa Cree tribal law."); *id.*, p. 27 (stating same in "Applicable Law and Judicial
Review" clause); and *id.*, p. 28 (stating same in "Governing Law" clause).

"Chippewa Cree Tribe" permits it to invoke equitable estoppel as an exception to the general rule that only parties to the agreement may be compelled to arbitrate. To be clear, Plaintiffs take no position on the applicability of tribal law other than to note that NABC has not even attempted to meet its burden under *Arthur Andersen* to show the law governing the Agreements permits it to invoke equitable estoppel. Accordingly, NABC has failed to meet its burden under *Arthur Andersen* and the inquiry ends there.

**B.**     **Even if this Court Considers the Issue Under Georgia Law, Equitable Estoppel Does Not Apply**.

Even if this Court considers the issue under Georgia law, the doctrine of equitable estoppel applies in only two circumstances: "(1) when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non[-]signatory and (2) when the signatory raises allegations of interdependent and concerted misconduct by both the non[-]signatory and one or more of the signatories to the contract." *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1320 (11th Cir. 2013) (citations omitted). Neither circumstance applies to Plaintiffs' claims against non-signatory NABC, as discussed below.

1.     Plaintiffs Do Not Rely on the Terms of the Contracts to Assert Their Claims

NABC argues that Plaintiffs Parm and Flagg "should be estopped from avoiding arbitration because their claims against NABC rely on the terms of the Consumer Loan Agreements and make reference to or presume the existence of those agreements"

(Doc. 86-1, p. 22), and this purported reliance entitles NABC to enforce the arbitration provisions in the Agreements. But Plaintiffs' claims are independent of the Agreements, and do not seek to enforce any obligations contained therein. The Eleventh Circuit has held that for purposes of the equitable estoppel doctrine, a "party relies on the terms of a contract when the party's claims are 'intimately founded in and intertwined with the underlying contract obligations.'…That is, the party must actually depend on the underlying contract to make out his or her claim against the non[-]signatory." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir. 2012) (citations omitted). Indeed, a party relies on the terms of a contract when the party needs the underlying contract to make out his or her claim against the non[-]signatory. *See In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003). In sum, "*[t]he signatory must attempt to hold the non[-]signatory to the terms of the contract*." *Byers*, 701 F.3d 1335, 1343 (emphasis added).[12]

Here, Plaintiffs Parm and Flagg do not attempt to hold NABC to the terms of the Agreements, and they do not allege that NABC breached the Agreements. Moreover, the claims they assert against NABC do not rely on the terms of the Agreements, and

---

[12] The rule in the Eleventh Circuit comports with that in other circuits. *See, e.g., Brantley v. Republic Mortg. Ins. Co.,* 424 F.3d 392, 396 (4th Cir. 2005) ("the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims…to be intertwined with that contract.").

there are no benefits of the contracts to which Plaintiffs would like to avail themselves. Indeed, NABC *has no duties under the contracts*. As such, Plaintiffs do not "rely on" the contracts to assert their claims. Therefore, NABC's rationale for compelling arbitration against Plaintiffs through equitable estoppel cannot satisfy the purpose of the doctrine for which it was created: "to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from 'rely[ing] on the contract when it works to [her] advantage [by establishing the claim], and repudiat[ing] it when it works to [her] disadvantage [by requiring arbitration].'" *In re Humana*, 285 F.3d at 976.

The Eleventh Circuit's decision in *Lawson* is instructive. In that controlling case—a case cited by NABC without discussion (Doc. 86-1, p. 16)—the plaintiffs purchased a vehicle from a car dealership. 648 F.3d at 1171. The loan agreement with that dealership contained a broad arbitration provision which included any disputes involving the plaintiffs' insurer. *Id*. At the time of the car purchase, the plaintiffs also purchased a "credit life insurance policy" from an insurer who was not a signatory to the loan agreement. *Id*. The plaintiffs sued regarding improper administration of that insurance policy, and their insurer attempted to enforce the arbitration clause in the loan agreement. *See id*. The Eleventh Circuit rejected the attempt:

> [The insurer] argues that the equitable estoppel exception fits because
> [plaintiffs'] claims arising from their credit life insurance policy
> agreement with it "make reference to" and "presume the existence of"
> the loan agreement containing the arbitration clause…It follows, [the
> insurer] argues, that the [plaintiffs'] claims against it "arise out of" the

loan agreement, which they must rely on to assert those claims…***That is not a bad argument, but it is not a good enough one to prevail***. Under Georgia law, a plaintiff's claims must directly, not just indirectly, be based on the contract containing the arbitration clause in order for equitable estoppel to compel arbitration of those claims.

*Id*. at 1172 (emphasis added) (internal citations omitted).

A subsequent decision, *Bahamas Sales Assoc., LLC v. Byers*, reaffirmed the Eleventh Circuit's holding in *Lawson*. In that case, the plaintiff purchased a plot of land in the Bahamas pursuant to a purchase agreement with a forum-selection clause. To fund the purchase, the plaintiff took out a mortgage from a separate, non-signatory entity, which allegedly inflated an appraisal improperly. The mortgagor then tried to enforce the Bahamian forum selection clause in the sales agreement using equitable estoppel. The Eleventh Circuit rejected the attempt, holding that the plaintiff's claim of fraudulent appraisals was not directly related to the purchase agreement as it was "not a fairly direct result of the performance of contractual duties' *under the purchase contract*." 701 F.3d at 1341 (emphasis added). The *Byers* court went on to observe that "the fact that a dispute could not have arisen but for an agreement does not mean that the dispute necessarily 'relates to' that agreement." *Id*. (citation omitted). The plaintiff's claim did "not rely on the terms of the lot purchase contract to impose liability on the [mortgagor]." *Id*. at 1344.

Similarly here, Plaintiffs Parm and Flagg do not "rely on the terms" of the Agreements to "impose liability on" NABC. Indeed, they do not allege that NABC

violated the terms of their Agreements with Plain Green because there were no duties under the Agreements for NABC to violate. In short, as in *Byers*, Plaintiffs' claims do not depend on any contractual promises that NABC made in the Agreements.

Finally, even if Plaintiffs' claims have "some relation" to the Agreements, related subject matter alone is insufficient to find that the claims "rely on" an agreement. *See, e.g., Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1321-22 (11th Cir. 2013) ("A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires"); *Lawson,* 648 F.3d at 1174 (A "but-for" relationship between the claims and the contract "alone is not enough to warrant equitable estoppel.").[13] In *Brantley v. Republic Mortgage Ins. Co*., 424 F.3d 392, an insurer attempted to compel arbitration as a non-signatory to the mortgage loan agreement which required mortgage insurance arguing that the plaintiffs' claims were "intertwined." The Fourth Circuit disagreed: "[a]lthough the mortgage insurance *relates* to the mortgage debt, the premiums of the mortgage insurance are separate and

---

[13] *See also Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 449 Fed. Appx. 704, 709 (10th Cir. 2011) (per curiam) (to invoke equitable estoppel "it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them"); *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1130 (9th Cir. 2013) (expressly rejecting defendant's argument that the plaintiffs' claims were necessarily intertwined because they "rely on the existence of [p]laintiffs' vehicle purchase transactions"); *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1230 (9th Cir. 2013) ("Even if Best Buy is correct that [p]laintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel.").

wholly independent from the mortgage agreement." *Id.* at 396. Here, NABC's ODFI

agreement with Plain Green is similarly separate and wholly independent from Plain

Green's loan Agreements with Plaintiffs.

Citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999),[14]

and *AutoNation Fin. Servs. Corp. v. Arain*, 592 S.E.2d 96, 100 (Ga. Ct. App. 2003)

(relying on the reasoning in *MS Dealer*)—cases that predate each of the Eleventh

Circuit decisions in *Lawson*, *Byers*, and *Bailey*—NABC argues that Plaintiffs' "claims

against NABC rely on the terms of the Consumer Loan Agreements and make

reference to or presume the existence of those agreements." (Doc. 86-1, p. 22).

However, in *Lawson*, the Eleventh Circuit specifically addressed why the reasoning

from *Arain* (and *MS Dealer*) would not apply to the fact pattern present here:

---

[14] NABC's reliance on *Order Homes, LLC v. Iverson*, 685 S.E.2d 304, 307-08 (Ga. Ct. App. 2009) is also misplaced. (Doc. 86-1, p. 20). In *Order Homes*, where the subject matter of a home purchase agreement with an arbitration clause was the construction and sale of a defect-free house, the plaintiffs' claims against the non-signatory construction company for defective construction "relied" on the agreement. Here, in contrast, Plaintiffs' claims against NABC are not based on any failure by Plain Green, NABC or anyone else to abide by the terms of the Agreements. In other words, Plaintiffs do not sue for a payday loan gone wrong, they sue for a payday loan that complied with the (illegal) contract.

NABC inexplicably also cites to *Wallace v. Rick Case Auto, Inc.*, 1:12-CV-4271-TWT, 2013 WL 5770996 (N.D. Ga. Oct. 23, 2013). (Doc. 86-1, pp. 22, 23). But that case concerns a confusion in the pleading, not equitable estoppel. The plaintiffs argued that their employer, Rick Case Cars, Inc., lacked standing to compel arbitration, since the arbitration agreements were in the name of "Rick Case Automotive Group." While the court assumed, for purposes of the motion, the latter entity was a non-signatory, the holding simply finds that all the Rick Case entities were interchangeable. *Id.*, at *6.

In the present case, by contrast [to *Arain*], the allegations supporting the [plaintiffs'] claims are not "tied directly" to the loan agreement, which is the contract containing the arbitration clause…*While the [plaintiffs'] claims do make reference to and presume the existence of the loan agreement*, there is nothing in their complaint to suggest that their claims "depend [ ] entirely" on any of their obligations under the loan agreement, as the claim in *Arain* did. Because of that, *Arain* does not support [defendant's] equitable estoppel argument.

*Lawson*, 648 F.3d at 1174 (emphasis added).

Indeed, the facts in *Arain* are very different from those presented here. In *Arain*, a car buyer alleged that a dealership had made misrepresentations to him regarding a theft protection program he purchased from another entity (a finance company) at the same time he bought a new car. 592 S.E.2d at 96. The purchase agreement with the dealership had an arbitration clause which the finance company, a non-signatory to that agreement, attempted to enforce. Significantly, the purchase of the theft protection program was part and parcel of the car purchase: it happened at the same time, was sold by the same entity that sold the car, and was paid for in the same way. On these facts, the *Arain* court ultimately held that "[Plaintiff's] claim 'makes reference to and presumes the existence of' the theft protection program charge contained in the installment contract and 'depends entirely upon [his] contractual obligation to pay' the fee; thus, the second basis for applying equitable estoppel is met." *Arain*, 592 S.E.2d at 101. However, that type of simple "but-for" analysis ("makes reference to and presumes the existence of") is precisely the type of analysis that the Eleventh Circuit

has recently rejected. *See, e.g., Bailey v. ERG Enterprises, LP*, 705 F.3d at 1321-22 ("A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires").

In sum, Plaintiffs do not rely on the terms of their respective Agreements with Plain Green in their claims against NABC, and cannot be forced to arbitrate those claims under theories of equitable estoppel.

> 2. The Complaint's Allegations Do Not Afford NABC the Right to Arbitrate under Principles of Equitable Estoppel

NABC argues, with respect to the second prong of the equitable estoppel analysis, that the Complaint contains "allegations of substantially interdependent and concerted misconduct." (Doc. 86-1, p. 22.) But the Eleventh Circuit has specifically rejected the argument that the mere allegation of a RICO conspiracy between a non-signatory defendant and a signatory non-defendant requires a finding of equitable estoppel:

> A plaintiff's allegations of collusive behavior between the signatory and nonsignatory parties to the contract do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant; rather, such allegations support an application of estoppel only when they "establish[ ] that [the] claims against [the nonsignatory are] intimately founded in and intertwined with the obligations imposed by the [contract containing the arbitration clause].

*In re Humana Inc. Managed Care Litig.,* 285 F.3d at 975 (citation omitted).

In *Arain* (cited in Doc. 86-1, p. 24), the Eleventh Circuit noted that *Humana* had rejected the concerted misconduct test articulated in *MS Dealer*, 177 F.3d at 947 (also cited in Doc. 86-1, pp. 24-25). *See Arain*, 592 S.E.2d at 100 (acknowledging that the *Humana* decision held that "the plaintiff's dependence on the underlying contract is the *sine qua non* of determining whether the application of equitable estoppel is appropriate").[15]

In fact, *Humana* rejects an argument identical to the one NABC makes here: the defendants contended that "allegations of…substantially interdependent and concerted misconduct" mandated "an application of equitable estoppel in this case simply because the doctors allege a RICO conspiracy." 285 F.3d at 975-76. The court strongly disagreed, holding instead that it was "the plaintiff's actual dependence on the underlying contract in making out the claim against the non[-]signatory defendant" that is always the *sine qua non* of an appropriate situation for applying equitable estoppel. *Id.*at 976. As discussed above, Plaintiffs Parm and Flagg do not so rely.[16]

---

[15] The *Arain* court then went on to apply that same test under Fifth Circuit law. The *Arain* court's concerted misconduct analysis under Fifth Circuit law is therefore neither controlling nor persuasive.

[16] Cases from other circuits agree that interdependent conduct is simply not enough to invoke equitable estoppel. *See, e.g., Murphy*, 724 F.3d at 1231-32 ("Mere allegations of collusion are insufficient to trigger equitable estoppel" the allegations "must also establish that the plaintiff's claims against the non[-]signatory are intimately founded in and intertwined with the ***obligations imposed by the contract*** containing the arbitration clause") (emphasis added); *In re Wholesale Grocery Products Antitrust Litigation*, 707 F.3d 917, 923 (8th Cir. 2013) (equitable estoppel only where plaintiff's

Here, even if Plaintiffs allege that NABC conspired with Illegal Payday Lenders generally, those allegations do not amount to an allegation of a relationship among those parties that is intertwined with the Agreements.

3.     <u>NABC's Unclean Hands Bar it from Utilizing Equitable Doctrines to Enforce Clauses Contained in the Agreements</u>

Finally, even if NABC could satisfy both prongs of the equitable estoppel test discussed above and show that the law governing the Agreements permits it to invoke equitable estoppel, it is a fundamental principle of law that "[h]e who comes into equity must come with clean hands." *$89,000, Plus or Minus, in U.S. Currency & Checks v. Ricon*, 691 F. Supp. 1411, 1415 (N.D. Ga. 1988) (quoting *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814 (1945)). "The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329–30 (1994). A court may invoke the doctrine of unclean hands "when there is a close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *In re Uwimana*, 274 F.3d 806 (4th Cir. 2001) *abrogated by Bullock v. BankChampaign, N.A.,* 133 S.Ct. 1754 (2013).

---

claims "arose directly from violations of the terms of a contract containing an arbitration clause.").

Here, the inequitable conduct is clear from the face of the Agreements. NABC facilitated loans that were illegal under the law of Georgia and 12 other states (plus D.C.) and then sought to rely on the same illegal contract in order to compel arbitration. At the very least, NABC's inequitable, bad faith actions here have "immediate and necessary relation to the equity that [NABC] seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The doors of equity are therefore closed to NABC's use of equitable doctrines such as estoppel to enforce clauses contained in the Agreements for those very same illegal loans. *See Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1052 (N.D. Cal. 2006) (doctrine of unclean hands precludes court from applying equitable estoppel to compel arbitration of claims against non-signatory based on fraudulent agreement).

## CONCLUSION

For the foregoing reasons, NABC's request to compel arbitration should be denied.

Dated: February 6, 2014.        Respectfully submitted,

**CHITWOOD HARLEY HARNES LLP**

By: *s/ Darren T. Kaplan*
    (GA Bar No. 172670)
    1350 Broadway, Suite 908
    New York, NY 10018
    Tel:  (917) 595-4600
    Fax:  (404) 876-4476

dkaplan@chitwoodlaw.com

Krissi T. Gore (GA Bar No. 687020)
Meryl W. Roper (GA Bar No.238919)
Ze'eva Kushner Banks
(GA Bar No. 430416)
1230 Peachtree Street, NE
Suite 2300, Promenade
Atlanta, GA 30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476
kgore@chitwoodlaw.com
mroper@chitwoodlaw.com
zkbanks@chitwoodlaw.com

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel, *admitted pro hac vice*
Steve Six, *admitted pro hac vice*
J. Austin Moore, *admitted pro hac vice*
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com
moore@stuevesiegel.com

**KOPELOWITZ OSTROW P.A.**
Jeffrey M. Ostrow, *admitted pro hac vice*
Jason H. Alperstein, *pro hac vice forthcoming*
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Tel:  (954) 525-4100
Fax:  (954) 525-4300
ostrow@KOlawyers.com
alperstein@KOlawyers.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei, *admitted pro hac vice*

Jeffrey D. Kaliel, *admitted pro hac vice*
Anna C. Haac, *pro hac vice forthcoming*
2000 L Street, NW, Suite 808
Washington, D.C. 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com
ahaac@tzlegal.com

*Counsel for Plaintiffs and the Class*

## **LOCAL RULE 7.1D CERTIFICATION**

Counsel for Plaintiffs hereby certifies that the text of this Pleading has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

_s/ Krissi T. Gore_
KRISSI T. GORE
Georgia Bar No. 687020
**CHITWOOD HARLEY HARNES LLP**

# CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2014, a copy of the foregoing "Plaintiffs' Response in Opposition to Defendant North American Banking Company's Motion to Compel Arbitration" was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

   *s/ Krissi T. Gore*
Krissi T. Gore
Georgia Bar No. 687020
***Counsel for Plaintiffs***

**CHITWOOD HARLEY HARNES LLP**
2300 Promenade
1230 Peachtree Street, NE
Atlanta, GA 30309
Phone: (404) 873-3900
Fax: (404) 876-4476
Email: kgore@chitwoodlaw.com